# UNITED STATES DISTRICT COURT

**DISTRICT OF RHODE ISLAND**

--------------------------------------------X

Hiu Lui NG
A 73-558-364

Petitioners,

Civil Action No.: CA07-290ML

-against-

Michael Chertoff, Secretary of Homeland Security,

Alberto Gonzales, U.S. Attorney General,
Department of Justice,

John Torres, Director,
ICE Office of Detention and Removal,

Bruce Chadbourne, Boston Field Office Director,
Office of Detention and Removal Operations,
Immigration and Customs Enforcement,

Wayne T. Salisbury Jr., Warden,
Donald W. Wyatt Detention Facility
Central Falls, Rhode Island

Respondents

--------------------------------------------X

**PETITION FOR WRIT OF HABEAS CORPUS WITH EMERGENCY ORDER TO SHOW CAUSE WITHIN THREE DAYS PURSUANT TO 28 U.S.C. §2241 *ET SEQ.***

1. Petitioner hereby petitions this Court under 28 U.S.C. § 2241, *et seq.*, to issue a Writ of Habeas Corpus ordering Petitioners' release from the custody of the Department of Homeland Security, United States Immigration and Customs

Enforcement ("ICE"). In the alternative, Petitioner requests that the Court order Respondents to show cause within three days pursuant to 8 U.S.C. §2243.

**GROUNDS FOR EMERGENCY ORDER TO SHOW CAUSE WITH A RETURN DATE OF THREE DAYS**

2. Petitioner requests that this Court order Respondent to immediately show cause why the relief requested in this petition should not be granted. According to 28 U.S.C. § 2243:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto. The writ, or order to show cause shall be directed to the person having custody of the person detained. *It shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed.*

28 U.S.C. § 2243 (emphasis added).

**JURISDICTION**

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 2241 (habeas corpus); 28 U.S.C. § 1331 (federal question jurisdiction); the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*.; F.R.C.P. Rule 81 *et seq*., and declaratory judgment and mandamus, brought pursuant to 28 USC sec. 2201, 28 USC sec. 1361.

**VENUE**

4. Venue is proper in this court, which exercises jurisdiction in petitions for habeas corpus filed by persons residing in the District of Rhode Island. Petitioner is incarcerated at Wyatt Detention Facility, Central Falls, Rhode Island.

## PARTIES

5. Petitioner is a native and citizen of the People's Republic of China. He is the beneficiary of an approved I-130 Immigrant Petition filed on his behalf by his United States Citizen wife. He is presently incarcerated at Donald W. Wyatt Detention Facility in Central Falls, Rhode Island.

6. Respondent Michael Chertoff is the duly appointed, qualified, confirmed and acting Secretary of Homeland Security. He is sued in his official capacity, in which he bears the responsibility of the administration and enforcement of all the functions, powers and duties of the newly formed Bureau of Immigration and Customs Enforcement ("ICE"), including maintaining and enforcing Petitioner's custody, setting terms of parole, if any.

7. Respondent, Bruce Chadbourne, the Boston District Field Office Director in charge of Office of Detention and Removal Operations of the Bureau of Immigration and Customs Enforcement ("ICE") is sued in his official capacity, in which he bears the responsibility of the administration and enforcement of the ICE's functions relating to detention and removal of aliens, including maintaining and enforcing Petitioner's custody, setting terms of parole, if any.

8. Respondent, Wayne T. Salisbury Jr., Warden of the Wyatt Detention Facility, is the official charged with responsibility for detention of Petitioner.

**<u>FACTUAL BACKGROUND</u>**

9. Petitioner, Hiu Liu NG ("Mr. Ng"), is a native and citizen of the People's Republic of China ("China"). He was born on August 3, 1974 in Wenzhou city, Zhejjiang Province in China.

10. Mr. Ng entered the United States with his parents on February 6, 1992 on a B-2 visa. He was seventeen years old at the time. He remained in the United States past the authorized time.

11. In 1995, Mr. Ng and his parents were solicited by an Immigration Service Company, which told them that they could apply for employment authorization cards. The agency told the family that they could apply for asylum because they were Catholics from China. Mr. Ng signed an asylum application, although he did not fully understand the content or the consequences of signing the application. He and his parents were scheduled to appear for an interview with the INS in Lyndhurst, NJ about April or May 1998. They appeared for the interview, and their case was referred to the Immigration Court in New York.

12. Mr. Ng and his parents <u>never received a Notice to Appear for Immigration Court</u>. Therefore, they did not appear in Immigration Court on the day they were scheduled to appear, and Mr. Ng was ordered removed *in absentia* on February 2, 2001.

13. Petitioner married his wife Lin Li QU on February 9, 2001. Ms. Qu was a legal permanent resident at the time.

14. Ms. Qu filed an I-130 Immigrant Petition on behalf of her husband Mr. Ng on April 20, 2001. It was around this time that Mr. Ng learned that he had been ordered removed by an Immigration Judge, because the attorney handling the I-130 petition informed him of the order.

15. Ms. Qu became a United States Citizen on June 13, 2003.

16. On August 11, 2006, Ms. Qu re-submitted an I-130 to USCIS because over five years had passed since she filed the form and they had not contacted the couple for approval. USCIS then scheduled an interview for Adjustment of Status on July 19, 2007 at 26 Federal Plaza.

17. On July 16, 2007, through attorney John Zhang, Mr. Ng filed a motion to reopen to the Immigration Court at 26 Federal Plaza in New York.

18. When Mr. Ng and Ms. Qu appeared for their interview ON July 19, 2007, Mr. Ng was arrested and detained by DHS officers.

19. On July 20, 2007, through undersigned counsel, Mr. Ng submitted another motion to reopen, based on lack of Notice, to the Immigration Court in New York.

20. On July 23, 2007, the undersigned counsel filed a parole request to the Boston ICE Field Office Director.

## LEGAL GROUNDS FOR RELIEF

## DETENTION BEYOND THE REMOVAL PERIOD IS UNLAWFUL

21. The removal order against Petitioner, Jian Hui Li, was a final order as of February 2, 2001 when the Immigration Judge ordered his removal. INA §241, 8 USC §1231.

22. According to INA § 241, "when an alien is ordered removed, the Attorney General ***shall remove*** the alien from the United States ***within a period of 90 days***.... During the removal period, the Attorney General shall detain the alien." INA § 241(a)(2), 8 U.S.C. § 1231(a)(2) (emphasis added).

23. In *Zadvydas v. Davis,* 533 U.S. 678 (2001), the Supreme Court determined that detention beyond six-months after the final order of removal is presumptively unreasonable, and the alien must be released unless the government can demonstrate that removal is reasonably foreseeable, or there are special circumstances justifying continued detention such as especially dangerous individuals. *Zadvydas*, 533 U.S. at 690; *see also* Memo of Attorney General John Ashcroft, 66 Fed. Reg. 38433 (2001) ("the Supreme Court indicated that there may be cases involving 'special circumstances,' such as terrorists or other especially dangerous individuals, in which continued detention may be appropriate even if removal is unlikely in the reasonably foreseeable future.").

24. *Zadvydas* is applicable to the case at bar as Petitioner is being detained beyond the removal period. *See also Clark v. Martinez*, 543 U.S. 371 (2006).

25. The six-month reasonable period under *Zadvydus* to effect removal expired on August 1, 2001. Thus, detention beyond that date is presumptively unlawful.

## CONTINUED DETENTION OF PETITIONER IS UNCONSTITUTIONAL

26. Petitioner is a person. *"No person* shall be... deprived of life, liberty, or property, without due process of law." U.S. Const., Amend. V. (emphasis added).

27. The Supreme Court has long recognized that the Fifth and Fourteenth Amendments refer to all "persons," and not just "citizens," thus aliens - even inadmissible or removable aliens, must be afforded due process protection. *See Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886) ("The Fourteenth Amendment to the Constitution is not confined to the protection of citizens."). As stated by the Court, the provisions of the Fourteenth Amendment "are universal in their application, *to all persons* within the territorial jurisdiction, without regard to any differences of race, of color, or of nationality...." *Yick Wo*, 118 U.S. at 369. (emphasis added).

28. In *Mathews v. Diaz*, the Supreme Court held, with respect to aliens in the United States on immigration parole pursuant to 8 U.S.C. § 1182(d)(5), that "even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection [of the Due Process Clauses of the Fifth and Fourteenth Amendments]" *Mathews v. Diaz.*, 426 U.S. 67, 75 n.7 (1976); *see also Plyler v. Doe*, 457 U.S. 202, 210 (1982) ( "Whatever his status under the immigration laws, an alien is surely a 'person' in any ordinary sense of that term."); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896) ("Persons within the territory of the United States... even aliens... [may not]... be deprived of life, liberty or property without due process of law.").

29. The Due Process Clause of the Fifth Amendment forbids the government from indefinitely detaining inadmissible aliens - potentially for life - without a tenable justification.

30. Government detention violates the fundamental substantive due process rights guaranteed to non-citizens unless it is either ordered in a criminal proceeding

with adequate procedural protections or it falls into "special and narrow non-punitive circumstances where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (citations omitted).

31. In. *Zadvydas*, the Court determined that the detention of aliens by the Service is "civil, not criminal, and we assume that [it is] non-punitive in purpose and effect." *Id.*

32. For a civil detention provision to survive constitutional scrutiny, it must be for a legitimate regulatory purpose and be narrowly tailored so as not to be excessive in relation to its purpose. *Salerno*, 481 U.S. at 746. However, "the mere invocation of a legitimate purpose will not justify particular restrictions and conditions of confinement amounting to punishment." *Schall v. Martin*, 467 U.S. 253, 269 (1984) (pretrial detention of juveniles). Even if the detention serves a purpose, "it is still necessary to determine whether the terms and conditions of confinement...are in fact compatible with those purposes" *Id; see also Addington v. Texas*, 441 U.S. 418, 425 (1979) ( "[C]ivil commitment *for any purpose* constitutes a significant deprivation of liberty that require due process protection.") (emphasis added).

33. The *Schall* and *Salerno* standard has been repeatedly adopted in the immigration context. *See Patel v. Zemski*, 275 F.3d 299, 307-11 (3d. Cir. 2001) (adopting the *Salerno* "heightened due process scrutiny to determine if [a] statute's [authorization of detention]... is narrowly tailored to serve a compelling state interest."); *Gisbert v. INS*, 988 F.2d 1437, 1442, *as. amended*, 997 F.2d 1122 (5th Cir. 1993) (determining that whether incarceration of immigrants constitutes

impermissible punishment "turn[s] on 'whether an alternative purpose to which [the detention] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.'") (*citing Schall* and *quoting Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963).

34. Here, ICE has failed to advance a legitimate or even rational purpose for the continued detention. Although in this instance, ICE has not even stated a purpose for continued detention, the general regulatory goals of post-removal order detention are "[e]nsuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690. *(quoting* Government's Brief); *see also Patel*, 275 F.3d at 312 ("The goals of post-removal order detention are] to prevent aliens from absconding or endangering the community.").

35. Because there is no likelihood of removal and there is no indication that Petitioner is in any way a danger to the community, there cannot be a purpose of continued detention. As such, the Constitution requires Mr. Li's immediate release.

**EVEN ASSUMING THAT PETITIONER IS BEING DETAINED DURING REMOVAL PERIOD, GOVERNMENT HAS UNLAWFULLY WITHHELD EVALUATION OF PETITIONER'S FLIGHT RISK**

36. Upon information and belief, Respondents have failed to conduct a "custody review" to determine Mr. Ng's eligibility for release.

37. Even assuming *arguendo* that the removal period has not expired, Mr. Ng must be released from detention because the ICE has failed to conduct a review of his flight risk.

38. If removal cannot be immediately accomplished, the Attorney General retains discretion to continue to detain aliens (only during the removal period) he determines "to be a risk to the community or unlikely to comply with the order of removal." INA § 241(a)(6), 8 U.S.C. § 1231(a)(6).

39. The implementing regulations grant the Attorney General's discretionary power to the Service's District Director. 8 C.F.R. § 241.4. According to the regulations, the District Director or Director of the Detention and Removal Field Office *"will* conduct the initial custody review... *prior to the expiration* of the removal period[]" to determine flight risk and danger to the community. 8 C.F.R. § 241.4(h)(l) (emphasis added).

40. To obtain release the alien must demonstrate "by clear and convincing evidence that the release would not pose a danger to the community or a significant flight risk." *Id.* In reaching a decision, the District Director may consider "(1) The nature and seriousness of the alien's criminal convictions; (2) Other criminal history; (3) Sentence(s) imposed and time actually served; (4) History of failures to appear for court (defaults); (5) Probation history; (6) Disciplinary problems while incarcerated; (7) Evidence of rehabilitative effort or recidivism; (8) Equities in the United States; and (9) Prior immigration violations and history." 8 C.F.R. § 241.4(a)(l)-(9).

41. Upon information and belief, Mr. Ng has not been granted the opportunity to demonstrate the above-criteria in a custody review as he was never sent a "Notice to Alien of File Custody Review."

42. Because ICE has failed to conduct the requisite review, the government is in violation of the laws and regulations governing detention, and continued detention

is unlawful.

43. The Supreme Court has ruled that before an agency can "extinguish the entitlement of... otherwise eligible beneficiaries, *it must comply, at a minimum, with its own internal procedures."* *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (emphasis added). The Court further explained that "[w]here the rights of individuals are affected, it is *incumbent upon agencies to follow their own procedures*. This is so even where the internal procedures are possibly more rigorous than otherwise would be required." *Id. (citing Service v. Duties*, 354 U.S. 363, 388 (1957); *Vitarelli v. Seaton*, 359 U.S. 535, 539-540 (1959) (emphasis added)).

44. Courts will invalidate "adjudicatory actions by federal agencies which violate[] their own regulations promulgated to give a party a procedural safeguard." *Mendez v. Immigration & Naturalization Service*, 563 F.2d 956, 959 (9th Cir. 1977) *(quoting Bates v. Sponberg*, 547 F.2d 325,330 (6th Cir. 1976)); *see also Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (reversing BIA decision for violation of its own regulations); *Gonzalez* v. *Reno*, 212 F.3d 1338 (11th Cir. 2000) ("[E]xecutive agencies must comply with the procedural requirements imposed by statute... [and also] must respect their own procedural rules and regulations.") *U.S. v. Heffher*, 420 F.2d 809 (4th Cir. 1969) (The courts must overturn agency actions which do not scrupulously follow the regulations and procedures promulgated by the agency itself); *Haitian Refugee Center v. Smith*, 676 F.2d 1023 1041 (5th Cir. 1982) ("[I]t is clear...that agency deviation from its own regulations and procedures may justify judicial relief...."); *Nicholas v. INS*, 590 F.2d 802, 809 (9th Cir. 1979) (Service violated its own regulations regarding the processing of a non citizen's request for

immigration records).

45. Therefore, because ICE has failed to follow the laws and regulations governing detention, the further detention of Mr. Ng is invalid. As such, ICE must release him forthwith or conduct an immediate custody review and provide a reasonable basis for detention (although no such basis exists).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

46. Petitioner filed a request for humanitarian parole pursuant to 8 C.F.R. §212.5(a)(2)(v) on July 24, 2007.

47. Petitioner filed a motion for a bond hearing with the Immigration Court on July 24, 2007.

48. Petitioner filed a motion to reopen removal proceedings based on lack of Notice on July 24, 2007.

49. Petitioner also requests, and asserts that he is entitled to consideration release on bail pending this Court's decision on this writ. *See Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001).

50. No prior application for release has been made to this Court on behalf of this Petitioner.

## RIGHT TO ATTORNEY'S FEES IN THIS ACTION

51. Petitioner is entitled to costs and attorney's fees associated with this action. Congress has authorized fee recovery by prevailing parties in the Equal Access to

Justice Act. Under EAJA, the prevailing litigant is entitled to attorney's fees and costs if the government fails to show that its position was substantially justified or that special circumstances make an award unjust and (3) the requested fees and costs are reasonable. *Perez-Arellano v. Smith,* 279 F.3d 791, 793 (9th Cir. 2002) (citing 28 U.S.C. § d)(1)(A)). As there is no lawful basis for detention, and the government action in this matter has been unwarranted and egregious, the government's position is not substantially justified, and thus, attorney's fees are appropriate.

**WHEREFORE**, YOUR PETITIONER PRAYS THIS HONORABLE COURT:

I. That the Court enter an order requiring respondent to release petitioner;

II. In the alternative, declare that Petitioner is eligible for a bond hearing, and that the same must be considered by Respondents;

III. In the alternative, directly grant bond as a condition of petitioner's release;

IV. That this Court grant interim release pending a final decision, and any appeal of such decision, on this writ; and

V. That the Court enter an order staying any removal of petitioner by respondent and staying enforcement, if any, of the prior removal order;

VI. That the Court grant any other and further relief may be fit and proper.

Dated: New York, New York
August 3, 2007

Theodore N. Cox, Esquire
Law Office of Theodore N. Cox
Attorney for Petitioner
401 Broadway, Suite 701
New York, NY 10013
Phone: (212) 925-1208
Fax: (212) 925-5188

Dated: Providence, RI
August 3. 2007

Steven D. Dilibero, Esquire #4678
Dilibero & Coloian, LLP
130 Dorrance Street
Providence, Rhode Island 02903
Phone: (401) 621-9700
Fax: (401) 331-9503

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on the 3RD day of August, 2007 a true copy of the within was caused to be hand-delivered to the Office of the United State's Attorney in the City of Providence, State of Rhode Island.

Dated: Providence, Rhode Island
August 3, 2007

Colleen Brophy